IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW STRAIT, on behalf of himself and similarly situated others, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 11-cv-1306 |
| v. | ) ) | |
| BELCAN ENGINEERING GROUP, INC., d/b/a BELCAN CORPORATION, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Two motions are before the Court. One is Plaintiffs' motion contesting Defendants' confidentiality designations requiring certain documents to be filed under seal, and the other is the parties' agreed motion for leave to file certain documents under seal. For the reasons set forth below, the Court denies Plaintiffs' motion and grants, in part, the parties' agreed motion. The Court takes the remainder of agreed motion under advisement pending further briefing from Defendant.

## BACKGROUND

Plaintiff Matthew Strait ("Strait"), for himself and purportedly on behalf of those who are similarly situated, brought the present lawsuit on February 24, 2011, asserting that Defendant Belcan Engineering Group, Inc. ("Belcan"), has violated the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Day and Temporary Labor Services Act ("DTLSA"). (R. 1, Compl. ¶ 1.) According to the Complaint, Belcan is an Ohio corporation and one of the country's largest providers of third-party contracting services of

full-service engineering contractors, employing thousands of contractors throughout Illinois and the United States. (*Id.*) Strait alleges that Belcan has refused to pay him and other employees an overtime premium for hours they have worked in excess of 40 hours per week and has instructed employees that they are not entitled to receive overtime. (*Id.*)

## LEGAL STANDARD

"There is a strong presumption toward public disclosure of court files and documents." *In re Bank One Secs. Litig.*, 222 F.R.D. 582, 585 (N.D. Ill. 2004) (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982)). The Seventh Circuit teaches that "[i]nformation that affects the disposition of litigation belongs in the public record unless a statute or privilege justifies nondisclosure." *United States v. Foster*, 564 F.3d 852, 853 (7th Cir. 2009). "[S]ecrecy is fine at the discovery stage, before the material enters the judicial record. But those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Id.* (internal citations and quotation marks omitted); *see also In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality."); *Hicklin Eng., L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("We have insisted that litigation be conducted in public to the maximum extent consistent with respecting trade secrets, the identities of undercover agents, and other facts that should be held in confidence.") (citing cases).

Federal Rule of Civil Procedure ("Rule") 26(c) provides that a court "may, for good

cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way." Fed. R. Civ. P. 26(c)(1)(G). The Seventh Circuit has made it clear that in order to show good cause to file a document or portion thereof under seal, the requesting party must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter Int'l v. Abbott Labs*, 297 F.3d 544, 548 (7th Cir. 2002). Moreover, if a party claims that injury will result from public disclosure of certain information, it must provide support for such a statement. *Bank One*, 222 F.R.D. at 588 (citing *Baxter Int'l*, 297 F.3d at 547).) After a court enters a protective order, "a party must continue to show good cause for confidentiality when challenged." *Id.* at 586 (citing *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)).

## ANALYSIS

**I.      Strait's Motion**

In its motion, Strait contests Belcan's confidentiality designations with respect to numerous documents that Belcan produced during discovery. Belcan has designated such documents as "CONFIDENTIAL–UNDER SEAL" pursuant to the agreed protective order that the Court entered on September 7, 2011. (R. 51.) Strait indicates that it may file some of those documents with the Court, and it contends that good cause does not exist to file them under seal. *See, e.g.*, *In re Specht*, 622 F.3d at 701; *Baxter Int'l*, 297 F.3d at 548.

Strait has provided an example of each document to the Court for *in camera* review. The documents at issue fall into two categories. The first category consists of Excel spreadsheets

containing data from 89 different single workweeks of Belcan's employees' time records (the "Excel Spreadsheets"). The data fields in the Excel Spreadsheets include employee number, work date, current supervisor, employment status, current locality, current location description, project/work order, cost code, pay type, pay type description, job type week worked, hours, total gross pay for workweek, current location, and current location description. Each Excel Spreadsheet contains approximately 5000 rows of data representing approximately 1200 time records for Belcan's direct exempt full time employees. Strait proposes to file the following data fields publicly: employee number, work date, current supervisor, current location description, pay type description, hours, and total gross pay for workweek. (R. 68, Pl.'s Mot. at 4.)

The second category of documents consists of approximately 851 pages of payroll registers for approximately 215 direct-exempt employees, representing the employees' final paychecks (the "Payroll Registers"). The Payroll Registers contain the following information: historical payroll register, date, company home, home business unit, payment code, description of pay type, pay type description, current hours, rate of pay, and tax deductions. Strait proposes filing only the first page of each Payroll Register, and it has agreed to redact the social security number, YTD dollars, YTD hours, and Tax and 401K deduction information.[1] The fields that Strait proposes filing publicly include company home, home business unit, current hours, and rate of pay.

---

[1] Despite the parties' agreement, the decision of whether good cause exists to file a document under seal rests solely with the Court. *See Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("The determination of good cause cannot be elided by allowing the parties to seal whatever they want, for then the interest in publicity will go unprotected unless the media are interested in the case and move to unseal.")

**II.     The Parties' Agreed Motion**

The parties jointly request leave to file seventeen documents under seal that Belcan produced during discovery and marked either "CONFIDENTIAL-UNDER SEAL" or "ATTORNEYS' EYES ONLY." Strait has provided copies of such documents to the Court for *in camera* inspection. Eight of the seventeen documents contain the same type of information as the Excel Spreadsheets and the Payroll Registers. Five of the seventeen documents contain "highly confidential, proprietary information" about one of Belcan's clients, including "technical information, organizational information, and information about [the client's] accounting system and process." (R. 75, Joint Mot. at 4.) The remaining four documents contain "highly confidential, proprietary information about Belcan's internal organization, financial strategy, and employee pay, in addition to private employee information." (*Id.*) Belcan contends that public disclosure of such information will cause "competitive harm." (*Id.*)

**III.    Belcan Has Met Its Burden to Show Good Cause for Redacting Information About Its Employees' Pay and the Names of Non-Party Employees**

In opposition to Strait's motion, Belcan submits a nine-page brief regarding the "propriety of secrecy, providing reasons and legal citations," with respect to information about its employees' pay and the names of non-party employees, including supervisors. *Baxter Int'l*, 297 F.3d at 548. Additionally, it submits a detailed Declaration of its Chief Financial Officer and a copy of its employee handbook. (R. 71, Belcan Opp.; R. 72, Declaration of Michael Wirth (the "Wirth Declaration"); R, 72-1, Belcan Corporation and Belcan Engineering Group, Inc.'s Employee Handbook (the "Employee Handbook").)

Belcan has sufficiently demonstrated that it uses reasonable efforts to maintain the secrecy of the employee pay information contained in the Excel Spreadsheets and Payroll

Registers. Specifically, such information is deemed "proprietary" and is subject to "policies that are designed to protect it from public or other improper disclosure." (Belcan Opp. at 5, citing Wirth Declaration ¶¶ 12-16.) Those policies require Belcan's employees who have access to the information to treat it as confidential, and they require secure destruction of copies of such information after use. (*Id.*) Moreover, the electronic systems that contain the information are password-protected, and access to employee pay information is accessible to only 25 corporate employees. (*Id.*, citing Wirth Declaration ¶ 10.)

Further, Belcan sufficiently explains how public disclosure of its employees' pay information in the Excel Spreadsheets and Payroll Registers would cause competitive harm. General assertions of "competitive harm" are insufficient to demonstrate good cause. *See Bank One*, 222 F.R.D. at 589. Belcan, however, goes beyond general assertions and explains specifically that because its business is "the outsourcing of engineering services to customers" and because it "typically charges an hourly rate for the work of its employees on customers' projects," "giving Belcan's competitors access to the specific amounts that Belcan pays its employees would provide them with valuable information about Belcan's costs and would create an unfair advantage for them in attempting to match or undercut Belcan's prices." (Belcan Opp. at 5, citing Wirth Declaration at ¶¶ 18-25.) Belcan further explains that "competition is fierce in recruiting and hiring the skilled workers that Belcan employs in the industry of outsourced engineering services." (*Id.*, citing Wirth Declaration ¶ 21.) Accordingly, "[g]iving such widespread pay information to Belcan's current and prospective employees . . . also causes a commercial harm to Belcan in its relationships and negotiations with them." (*Id.*, citing Wirth Declaration ¶ 24.) Moreover, "making the pay information in the Excel Spreadsheets and

Payroll Register records available to Belcan's customers would create additional commercial harm for Belcan" because "customers would [be able to] gain knowledge of many specific examples of the margin between what Belcan charges its customers and what it pays the employees who are providing the outsourced engineering services." (*Id*., citing Wirth Declaration ¶ 22.) Belcan's argument, which is supported by the Declaration of its Chief Financial Officer, sufficiently demonstrates that public disclosure of the Payroll Records and Excel Spreadsheets would cause it to suffer competitive harm. *See In re Aqua Dots Prods. Liability Litig*., No. 08-cv-2364, 2009 WL 1766776, at *2 (N.D. Ill. June 23, 2009) ("'matters whose disclosure would affect defendants with their respective competitors or in conjunction with the day-to-day operation of their business' warrant protection") (quoting *Culinary Foods, Inc. v. Raychem Products*, 151 F.R.D. 297, 301 (N.D. Ill. 1993)). Strait has not refuted any of the facts set forth by Belcan.

Additionally, Belcan has demonstrated that good cause exists to protect the names of its supervisors from public disclosure. Belcan asserts that it derives commercial benefit from the confidentiality of its supervisors' names and public disclosure of those names would cause competitive harm. Most of the supervisors whose names are listed in the Excel Spreadsheets perform their own engineering work for Belcan and also have supervisory duties, including developing and maintaining customer relationships and contributing to Belcan's sales efforts. (Belcan Opp. at 7, citing Wirth Declaration ¶¶ 27-28.) Competition in the industry is fierce for hiring these key employees. (*Id*., citing Wirth Declaration ¶ 29.) Belcan would be competitively harmed by the public disclosure of long lists of supervisors' names because Belcan's competitors, and recruiters working on behalf of those competitors, would be able to easily

contact those supervisors and seek to hire them away from Belcan. (*Id*. at 7-8, citing Wirth Declaration ¶¶ 29-30.) Moreover, Belcan's supervisors are not parties to this case, the parties have not, at least at the present time, explained why their names are relevant to the parties' dispute. *See Little v. Mitsubishi Motor Mfg. of Am., Inc*., No. 04-1034, 2006 WL 1554317, *4 (C.D. Ill. June 5, 2006) (allowing parties to redact nonparty employee names and other identifying information from court filings).

Accordingly, the Court denies Plaintiffs' motion and grants leave to the parties to file under seal portions of documents containing employee pay information and the names of non-party employees from the Excel Spreadsheets and Payroll Registers. The parties may also redact such information from the documents identified in their agreed motion and marked BE00098, BE00102, BE01398-1401, BE01547, BE01975, BE01978-2001, BE02162-68, and BE02527-38, which the Court has reviewed *in camera*.

**IV.     Belcan Must Provide Additional Information Before the Court May Determine that Good Cause Exists to File Under Seal All or Part of the Remaining Nine Documents Identified in the Agreed Motion**

The parties' agreed motion does not explain, with the specificity that the Seventh Circuit requires, why good cause exists to file the remaining nine documents identified in the parties' agreed motion under seal. The Court grants leave to Belcan to file, by June 21, 2012, additional support for its request to file those documents under seal.

**CONCLUSION**

For the reasons set forth above, the Court denies Plaintiff's motion contesting Defendant's confidentiality designations, and grants in part the parties' agreed motion for leave to file certain documents under seal. The Court takes the remainder of the parties' agreed motion under advisement pending an additional submission from Defendant.

DATED: June 18, 2012                                    ENTERED

                                                                           _____
                                                                           AMY J. ST. EVE
                                                                           United States District Court Judge